### UNITED STATES ex rel. Sadrija RADONCIC, Petitioner,

v.

### Charles ZEMSKI, Acting District Director United States Immigration and Naturalization Service, Respondent.

### No. Civ.A. 00–CV–4394.

United States District Court,
E.D. Pennsylvania.

Nov. 8, 2000.

James J. Orlow, Philadelphia, PA, for plaintiff.

Linda L. Bocchino, Assist. U.S. Atty., Philadelphia, PA, for defendant.

### MEMORANDUM AND ORDER

KAUFFMAN, District Judge.

Petitioner Sabrija Radoncic ("Radoncic"), an alien from Serbia–Montenegro currently in the custody of the Immigration and Naturalization Service ("INS"), has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in which he contends that confining him indefinitely, without the possibility of release on bail, is a denial of his substantive and procedural due process rights.[1] He now

---

1. Radoncic has been detained indefinitely in the general population of a county prison

seeks an immediate hearing before an Immigration Judge to determine his eligibility for release on bail. Respondent, the Acting District Director, Immigration and Naturalization Service, Philadelphia District, ("Respondent") has opposed the petition, first arguing that Radoncic has failed to exhaust his administrative remedies before the Board of Immigration Appeals and, in the alternative, that § 1226(c) is constitutional.[2] As explained more fully below, the Court holds that § 1226(c) violates Radoncic's right to due process of law and that he is entitled to the relief set forth in the Order that follows this Memorandum.

### BACKGROUND

In March 1991, Radoncic and his wife, natives of Serbia–Montenegro, entered the United States "at or near an unknown point along the Mexican border . . . without inspection by an immigration officer." In November 1993, the couple applied to the INS for asylum.[3] On March 11, 1996, the INS issued an Order to Show Cause charging Radoncic and his wife with deportability under former INA § 241(a)(1)(B), 8 U.S.C. § 1251(a)(1)(B), for entering the country without inspection. At a hearing held before an Immigration Judge on July 24, 1996, they conceded deportability as charged, but requested "asylum, withholding of deportation, and voluntary departure in the alternative."

On August 15, 1996, Radoncic was taken into custody by the United States Border Patrol and charged with smuggling other Muslims from Serbia–Montenegro into the United States. On August 29, 1996, *a $5,000.00 bond was posted, and Radoncic was released from custody.* He subsequently was convicted of smuggling aliens into the United States in violation of 8 U.S.C. § 1324 and of conspiracy to smuggle aliens into the United States in violation of 8 U.S.C. § 371. On January 25, 1999, Judge William K. Sessions III of the United States District Court for the District of Vermont sentenced him to an 18–month term of incarceration. When imposing the sentence, Judge Sessions made the following significant findings and recommendation:

> The Court finds this to be an *extraordinary situation.* Whether or not profit was gained, the defendant did not become wealthy. The major purpose was in service of his community in Yugoslavia and Astoria, NY. Also, *the Court finds that this defendant is not a dangerous person.* Therefore the Court *strenuously recommends* that this defendant *not be deported* upon completion of his sentence and that this statement from the Court be sent to the Immigration Court . . . . .

*United States v. Radoncic,* No. 2:97CR00047–001 (D.Vt. filed Jan. 25, 1999) (emphasis added). Radoncic *voluntarily surrendered* to serve his sentence on February 23, 1999.

Because of the conviction, the Immigration Judge presiding over Radoncic's deportation proceedings found him to be "ineligible for asylum, but potentially eligible for withholding of deportation."[4] On April 11, 2000, however, the Immigration Judge denied Radoncic's application for

---

pursuant to 8 U.S.C. § 1226(c), which mandates his detention and has been construed to deny him the possibility of release on bail while removal proceedings are pending.

2. Following a hearing before this Court on September 7, 2000, Respondent withdrew its argument that Radoncic was required to exhaust administrative remedies. Respondent concedes that the Court has habeas jurisdiction regarding the issue of the constitutionality of the mandatory detention provisions.

3. Radoncic testified that he is a Muslim, that he fled Serbia–Montenegro because he had been subjected to religious persecution, and that he feared that he would be killed if compelled to return.

4. Aside from the alien smuggling, Radoncic has not been charged with any offense while in this country.

relief from deportation and ordered that he be removed to Serbia–Montenegro. Radoncic's appeal from that decision to the Board of Immigration Appeals ("BIA") is still pending.

On May 19, 2000, the Bureau of Prisons released Radoncic to the custody of the INS. An Immigration Judge denied Radoncic's request for a bail hearing, asserting that 8 U.S.C. § 1226(c)(1) deprived him of jurisdiction to consider the application during the pendency of his appeal. Radoncic's petition for a writ of habeas corpus asserting a violation of his constitutional right to due process of law was filed on August 28, 2000. This Court held a hearing on September 7, 2000.

### CONSTITUTIONALITY OF § 1226(c)

Section 1226(c) provides, in relevant part:

> The Attorney General shall take into custody any alien who—. . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title . . . when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense. . . .

8 U.S.C. § 1226(c)(1)(B). Section 1227(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). The alien smuggling for which Radoncic was convicted is an "aggravated felony" for purposes of this section. See 8 U.S.C. § 1101(a)(43)(N). Section 1226(c) thus allows or, arguably, requires the INS to hold

Radoncic without bond during the pendency of his removal proceedings. Radoncic contends that the invocation of 8 U.S.C. § 1226(c) to deny him a bail hearing violates his right to procedural and substantive due process.[5]

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Even an excludable alien is a "person" for purposes of the Fifth Amendment and is therefore entitled to due process. See Chi Thon Ngo v. INS, 192 F.3d 390, 396 (3d Cir.1999) (citing Wong Wing v. United States, 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896) ("[A]ll persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth and Sixth Amendments], and . . . even aliens shall not be . . . be deprived of life, liberty, or property without due process of law.")); see also Reno v. Flores, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."); Ma v. Reno, 208 F.3d 815, 825 (9th Cir.2000) ("[N]umerous cases establish that once an alien has 'entered' U.S. territory, legally or illegally, he or she has constitutional rights, including Fifth Amendment rights."), cert. granted, —— U.S. ——, 121 S.Ct. 297, —— L.Ed.2d —— (2000).

Although district courts have split over the question of whether indefinitely foreclosing any possibility of release during the pendency of removal proceedings violates an alien's right to due process of law, this Court adopts the reasoning so well

---

5. Although the only two circuit courts to have considered the constitutionality of § 1226(c) have upheld the statute, see Parra v. Perryman, 172 F.3d 954 (7th Cir.1999); Richardson v. Reno, 162 F.3d 1338, 1363 n. 119 (11th Cir. 1998), vacated on other grounds, 526 U.S. 1142, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999), a number of courts, including two in this Circuit, have found it unconstitutional, see Koita v. Reno, 113 F.Supp.2d 737 (M.D.Pa.2000); Bouayad v. Holmes, 74 F.Supp.2d 471 (E.D.Pa.1999), appeal dismissed, No. 00–1111 (3d Cir. filed Oct. 23, 2000); see also Welch v. Reno, 101 F.Supp.2d 347 (D.Md.2000); Chukwuezi v. Reno, NO. CIV. A. 3:CV–99–2020, 2000 WL 1372883 (M.D.Pa. May 16, 2000).

expressed by Judge Katz in *Bouayad v. Holmes,* 74 F.Supp.2d 471, 474–76 (E.D.Pa.1999), *appeal dismissed,* No. 00–1111 (3d Cir. filed Oct. 23, 2000), and finds the mandatory detention provisions of § 1226(c) to be unconstitutional. *See also Koita v. Reno,* 113 F.Supp.2d 737, 741 (M.D.Pa.2000).[6]

Moreover, the reasoning of *Chi Thon Ngo v. INS,* 192 F.3d 390 (3d Cir.1999), inexorably leads to the conclusion reached here. In *Chi Thon Ngo,* the Third Circuit considered whether the indeterminable detention of an alien subject to a final order of exclusion pending his ultimate deportation violates the alien's right to due process, and held that

> excludable aliens with criminal records as specified in the Immigration Act may be detained for lengthy periods when removal is beyond the control of the INS, *provided that* appropriate provisions for parole are available. When detention is prolonged, *special care must be exercised so that the confinement does not continue beyond the time when the original justifications for custody are no longer tenable.* The fact that some aliens posed a risk of flight in the past does *not* mean they will forever fall into that category. Similarly, pre-senting danger to the community at one point by committing crime does not place them forever beyond redemption. Measures must be taken to assess the risk of flight and danger to the community *on a current basis.* The stakes are high and we emphasize that grudging and perfunctory review is not enough to satisfy the due process right to liberty, even for aliens..... The process due even to excludable aliens *requires* an opportunity for an evaluation of the individual's *current threat* to the community and his risk of flight.

*Id.* at 398 (footnote omitted, emphasis added). If an alien who is subject to a *final* removal order is constitutionally entitled to an individualized assessment of the risk of flight and danger to the community on a current basis, then *a fortiori,* an alien who is not yet subject to a final removal order must be accorded the same opportunity. *See Bouayad,* 74 F.Supp.2d at 475.[7]

Respondent suggests that *Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993), stands for the proposition that the indefinite detention of an alien who has been convicted of an aggravated felony does not implicate a fundamental liberty interest. Contrary to Respondent's suggestion, however, the

---

**6.** As noted *supra* note 5, numerous courts have concluded that § 1226(c) implicates fundamental liberty interests, and that detaining an alien indefinitely without affording him or her any opportunity to challenge the necessity of detention is unconstitutional. *See, e.g., Son Vo v. Greene,* 109 F.Supp.2d 1281 (D.Colo. 2000); *Welch v. Reno,* 101 F.Supp.2d 347 (D.Md.2000); *Bouayad v. Holmes,* 74 F.Supp.2d 471 (E.D.Pa.1999); *Rogowski v. Reno,* 94 F.Supp.2d 177 (D.Conn.1999); *Danh v. Demore,* 59 F.Supp.2d 994 (N.D.Cal. 1999); *Van Eeton v. Beebe,* 49 F.Supp.2d 1186 (D.Or.1999); *Martinez v. Greene,* 28 F.Supp.2d 1275 (D.Colo.1998); *Chamblin v. INS,* NO. 98–97–JD, 1999 WL 803970 (D.N.H. June 8, 1999).

**7.** In *Chi Thon Ngo,* the petitioner was subject to a final removal order, but remained detained in the United States indefinitely because his native country, Vietnam, refused to accept him. Here, Radoncic's order of removal is not final because the BIA has not yet ruled on his appeal. During the September 7, 2000 hearing, Radoncic represented to the Court that the BIA had not yet issued a briefing schedule and that he does not know when it will render a decision on his appeal. Respondent represented that the Government does not know whether, if the appeal is denied, Radoncic's native country will accept him. Thus, although the facts of *Chi Thon Ngo* differ in some ways from those presented here, both cases deal with indeterminable detention, and the factual differences thus do not compel different results.

Moreover, the Court finds it significant that unlike *Chi Thon Ngo,* this case involves a detainee who might eventually be granted relief from deportation. Indeed, Judge Sessions of the United States District Court for the District of Vermont *expressly found* that Radoncic is *not a dangerous person and strenuously recommended that he not be deported* upon completion of his sentence.

Supreme Court has not addressed whether deportable aliens have a fundamental liberty interest in being free from indefinite detention. In *Flores,* a class of minors challenged an INS regulation that requires juvenile aliens to be placed in institutional group care facilities during the pendency of deportation proceedings if a guardian or adult relative is not available to take custody. The Court recognized that strict scrutiny applies "when fundamental rights are involved," *see id.* at 302, 305, 113 S.Ct. 1439, but it rejected the minors' substantive due process claim because it found that no fundamental right existed under the circumstances of the case. *See id.* at 305, 113 S.Ct. 1439. The Court characterized the interest at stake as "the alleged interest in being released into the custody of strangers." *Id.* at 305, 113 S.Ct. 1439.

Moreover, the Third Circuit has held that "[e]ven an excludable alien is a 'person' for purposes of the Fifth Amendment and is thus entitled to substantive due process." *Chi Thon Ngo v. INS,* 192 F.3d 390, 396 (3d Cir.1999). Although the *Chi Thon Ngo* court expressly limited its holding to excludable aliens and expressed no view on situations involving deportable aliens, *see id.* at 398 n. 7, there is no reason why an excludable alien would be entitled to greater protection than a deportable alien: "Once an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly." *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). "In fact, several recent district courts have found, in detention contexts, that deporta-

ble aliens are entitled to *greater* substantive due process than excludable aliens." *Kay v. Reno,* 94 F.Supp.2d 546, 553 (M.D.Pa.2000) (emphasis added) (citing cases). Consequently, the Court rejects Respondent's suggestion that the indefinite detention of Radoncic does not implicate fundamental liberty interests. *Cf. Welch v. Reno,* 101 F.Supp.2d 347, 353–54 (D.Md.2000) ("This court joins those that have rejected the application of *Flores* to section [1226(c)])." (citing *Van Eeton v. Beebe,* 49 F.Supp.2d 1186, 1189 (D.Or. 1999); *Danh v. Demore,* 59 F.Supp.2d 994, 1003 (N.D.Cal.1999); *Martinez v. Greene,* 28 F.Supp.2d 1275, 1281 (D.Colo.1998)).

Although Radoncic does not have an absolute right to remain at liberty while the removal proceedings are pending, due process requires a current individualized evaluation to determine whether his continued indefinite detention is necessary to prevent a risk of flight or a threat to the community.[8] An Order follows.

### *ORDER*

**AND NOW,** this 8th day of November 2000, **IT IS ORDERED** that the petition for a writ of habeas corpus under 28 U.S.C. § 2241 is **GRANTED** as follows:

1. Petitioner is to be **RELEASED** from custody unless Respondent commences an individualized evaluation, including an individual hearing and decision within thirty days, to determine whether the continued detention of Petitioner is necessary to prevent risk of flight or danger to the community.[1]

2. If Petitioner demonstrates that he is not a threat to the community or a flight

---

**8.** "While the risk of flight by aliens may be significant, the public can still be protected by a careful evaluation of an individual alien's case, which should result in the detention of those who are likely to flee." *Bouayad v. Holmes,* 74 F.Supp.2d 471, 475 (E.D.Pa. 1999). "To presume dangerousness to the community and risk of flight based solely on his past record does not satisfy due process." *Chi Thon Ngo v. INS,* 192 F.3d 390, 398–99 (3d Cir.1999).

**1.** "In undertaking this review, the INS is reminded that 'grudging and perfunctory review is not enough to satisfy the due process right to liberty, even for aliens.' " *Bouayad v. Holmes,* 74 F.Supp.2d 471 (E.D.Pa.1999) (quoting *Chi Thon Ngo v. INS,* 192 F.3d 390, 398 (3d Cir.1999)).

risk, Respondent immediately shall order him released from custody on bond upon reasonable conditions.

3. So long as Petitioner remains in INS custody, the procedure set forth in paragraph 1 hereof shall be repeated every nine months if he so requests.